## Commonwealth v. Bowers

*Oscar F. Spicer,* for Commonwealth.

*Robert E. Campbell,* for defendant.

MacPHAIL, P. J., December 27, 1972.—In this case the State Police were called to investigate a one car accident. When they arrived at the scene they found two female persons lying near the car. Defendant was one of those individuals; she was semiconscious and in shock. It was later determined that she was the operator of the vehicle in question. Both persons were taken to the hospital where a blood sample was taken from each one of them. Defendant was not advised of her constitutional rights, she did not consent to the blood test, she had not been arrested prior to the taking of the blood sample and no search warrant had been procured with respect to the taking of the blood sample. Defendant was arrested for driving under the influence after the blood test results were

returned to the police a few days after the accident. Defendant waived her right to a jury trial and the case was heard without a jury.

The prosecuting officer testified at trial that he made his arrest *solely* on the basis of the blood test results. He also stated that the only reason he ordered the blood test was because he thought the accident would be a fatal one and that State Police policy was to have blood samples taken in such cases.

After the officer's testimony at trial, defendant moved to suppress the evidence regarding the blood test. We refused his motion as being untimely. However, we construed his objection to be against the introduction of that evidence in order to preserve defendant's post trial rights. We then overruled the objection. Defendant and her passenger both testified at trial. At the conclusion of the trial we found defendant guilty as charged.

Post trial motions have been filed challenging our ruling on the admission of the blood test results together with the other usual reasons. We will limit our discussion to the admissibility of the disputed evidence since it is quite obvious that the blood test result is the only evidence upon which defendant can be convicted in this case.

Whether or not our ruling on the timeliness of the motion to suppress was correct, is immaterial. The purpose of Pennsylvania Rule of Criminal Procedure 323(b) is to prevent delays in trials by the presentation of motions which are obviously calculated for the purpose of delay only. Here we had a nonjury trial. We had heard all of the officer's testimony before the motion to suppress was made. A motion to suppress under such circumstances would be inappropriate.

However, as we previously noted, we construed defendant's motion to suppress to be, in fact, an objec-

tion to the admissibility of the blood test evidence. Our ruling on that objection is now properly before us for review.

The issue is really a narrow one: Does subsection (f) of section 624.1 of The Vehicle Code authorize the extracting of a blood sample for the purpose of determining the alcoholic content therein in the absence of "reasonable grounds" to believe that the person from whom the blood is extracted was driving under the influence of intoxicating liquor?

Subsection (f) was added to section 624.1 of The Vehicle Code by virtue of the provisions of an amendment to that section approved July 31, 1968, P. L. —, (No. 237), §1, 75 PS §624.1. The amendment provides as follows:

"(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence."

Subsection (a) of section 624.1 reads in pertinent part as follows:

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, that the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer *having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor.*" (Italics supplied.)

In the case now before us, it is the Common-

wealth's contention that subsection (f) stands alone and that blood withdrawals can be made from persons physically unable to give a breath sample whether or not there has been any "reasonable grounds" to suppose that the person was driving under the influence. We do not agree.

Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), is the landmark case on the constitutionality of blood tests taken for the purpose of determining alcoholic content. In that case the arresting officer smelled liquor on defendant's breath and observed other symptoms of drunkenness at the accident scene and at the hospital within two hours of the accident. The court said this was sufficient "probable cause" to make a warrantless search. However, the court went on to point out that while there is an unrestricted right on the part of the government to search the person of the accused when legally arrested, searches beyond the body surface are subject to greater restrictions: "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence *might* be obtained. In the absence of a *clear indication* that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search": 16 L. Ed. 2d at 919. (Italics supplied.) The court did hold that a search warrant need not be secured under certain circumstances but even in those "circumstances" the officer had to have *some* grounds to believe that the blood test would reveal alcoholic content.

President Judge Atkins of the York County Court of Common Pleas in Commonwealth v. Klinedinst, 82 York 198 (1969), in construing subsection (f) concluded that the "taking of blood from a person's body

solely for the purpose of ascertaining its alcoholic content so that the information may be used to sustain a charge of operating a motor vehicle while under the influence of intoxicating liquor constitutes a search and is under the protection of the Fourth Amendment of the Federal Constitution: Schmerber v. California, 384 U.S. 757, 767, 16 L. Ed. 2d 908, 918. Therefore in order to sustain the validity of the search the prosecution must show that it was made pursuant to a valid search warrant or that it was made under such circumstances that rendered a warrant unnecessary." (page 199.) Judge Atkins also concluded that subsection (f) must be read in conjunction with subsection (a) to the extent that the operation of a motor vehicle constitutes implied consent to a blood test only where the police officer has reasonable grounds to believe the person was driving under the influence. See Commonwealth v. Logan, 13 Adams 7 (1969), to the same effect.

Apart from the constitutional questions, we are of the opinion that from the standpoint of common sense the Legislature could not have intended that every person who (1) operates a motor vehicle and (2) is unable to submit to a chemical test for blood content thereby consents to a blood test. The prime example of such an absurd result would be the nondrinking individual whose jaw is fractured before he is involved with the police. He may have driven his car in a perfectly acceptable manner and there are no other "probable grounds" for believing he is under the influence. Yet, he may have been stopped for lack of an inspection sticker. Under such circumstances, the Commonwealth's argument, if carried to its logical extreme, would be that the operator could be compelled to submit to a blood test. It is presumed that the Legislature never intends an absurd result: Act of May 28, 1937, P. L. 1019, 46 PS §552(1).

The Commonwealth has argued that subsection (f) was added to section 624.1 to meet the problem raised in Commonwealth v. Murray, 441 Pa. 22 (1970). In that case, the court held that a blood test made without a search warrant and without defendant's consent could not be validated as a search incident to an arrest where the accident happened about 13 days prior to defendant's arrest. Here, the Commonwealth seems to contend that the addition of subsection (f) in some way avoids or circumvents the results obtained by applying the Fourth Amendment to blood samples taken for the purpose of proving alcoholic content in the blood. In the first place, the time sequence will not support this reasoning. The factual situation in Murray occurred March 21, 1968. The case was not decided by the lower court until November 13, 1968 (19 Cumberland 2 (1968)). The amendment adding subsection (f) was approved July 31, 1968. Therefore, it is extremely unlikely that the Legislature was even aware of the Murray case at the time the amendment was proposed. Moreover, it is axiomatic that a statutory provision cannot be effective to validate something that is unconstitutional. To the contrary, it is presumed that the General Assembly does not intend to violate the Constitution: Act of May 28, 1937, supra. Applying that rule of construction to the facts of this case, we can presume that the Legislature did not intend to make subsection (f) applicable to the taking of a blood sample where there are no grounds to believe that the person was driving while under the influence.

There is no doubt that driving under the influence is one of the most serious problems we have in modern society. Every effort should be made to remove such persons from the highway for the safety of others as well as the safety of themselves, but such broad public policy considerations can never permit the courts to

permit the violation of basic constitutional rights, especially where those rights pertain to the invasion of "human dignity and privacy."

Our ruling at trial on the admissibility of the results of the blood tests was in error. While we must grant a new trial under such circumstances, we cannot grant the motion in arrest of judgment, because in considering such a motion "all evidence actually received must be considered, whether the trial rulings thereon were right or wrong": Commonwealth v. Hazlett, 429 Pa. 476, 478 (1968).

### ORDER OF COURT

And now, December 27, 1972, defendant's motion in arrest of judgment is refused. Defendant's motion for a new trial is granted.